FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

03 MAR 31 PM 1:44

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| CANDENCE MEDICAL FUNDING, INC., FEDERAL TRANSTEL, INC., | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) CV 01-B-2997-S ) |
| DAVID GIORGIONE; INTEGRETEL, INC., | ) ) ) |
| Defendants. | ) |

ENTERED
MAR 31 2003

## MEMORANDUM OPINION

Currently before the court is a Motion to Dismiss for Lack of Personal Jurisdiction filed by defendant Integretel, Inc., (doc. 9), and a Motion to Dismiss for Improper Venue, filed by defendant David Giorgione, (doc. 14). Upon consideration of the record, the submissions of parties, the argument of counsel, and the relevant law, the court is of the opinion that defendants' Motions to Dismiss are due to be granted and plaintiffs' claims are due to be dismissed.

Plaintiffs, Candence Medical Funding, Inc. ["CMF"] and Federal Transtel, Inc. ["FTT"], commenced this action by filing a diversity action in this court against defendants Private Voice, Inc., formerly known as Paragon Voice, Inc.; David Giorgione; and Integretel, Inc., for breach of contract, conversion, tortious interference with contractual relationships and prospective business relationships, and business libel. (*See* doc. 4.) Private

28

Voice, formerly known as Paragon Voice, was dismissed without prejudice following the filing of its Suggestion of Bankruptcy. (Doc. 12.)

## II. STATEMENT OF FACTS

Integretel is a corporation incorporated under the laws of California and maintains its principal place of business in San Jose, California. (Doc. 4 ¶ 5; Dawson Decl. ¶ 4.)[1] Integretel is an end-to-end billing service bureau. (Dawson Decl. ¶ 4.) Dawson testified as follows with respect to Integretel's contacts to the State of Alabama:

> Integretel is not licensed to do business in Alabama and does not maintain a registered agent for service of process in Alabama. Integretel does not do business in Alabama. It maintains no offices, places of business, post office boxes, or telephone listings in Alabama. Integretel has no real estate, bank accounts or other interest in property in Alabama, and has not had real estate, bank accounts or other interest in property in Alabama. Integretel has no agents or sales representatives in Alabama. It has no employees in Alabama and has not recruited any employees from Alabama. At no time relevant to this lawsuit has Integretel entered into a contract in Alabama or committed any tort, in whole or in part, in Alabama. Integretel has not entered into a contract with any client entity domiciled in Alabama, nor do any of Integretel's clients have any offices in Alabama. Integretel has not participated in the decision to sell or deliver any goods or service in Alabama.

(*Id.* ¶ 6.)

Integretel has entered into contracts with entities that either do business in Alabama or have contracts with Alabama entities. First, Integretel has entered a contract with

---

[1] The Declaration of Ken Dawson, President of Integretel, is attached as Exhibit A to the Memorandum in Support of Defendant Integretel, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction.

BellSouth Corporation ("BellSouth"). (*Id.* ¶ 7.) According to Dawson, BellSouth has a field office in Birmingham, Alabama, "with which Integretel has had sporadic contact via telephone." (*Id.*) According to Dawson, "Integretel's contract with BellSouth was executed in Georgia and California with BellSouth's Georgia office as signatory, contains Georgia choice of law provisions, and was negotiated by Integretel pursuant to Georgia state law." (*Id.*) Second, Integretel has contacts with Independent NECA Services and Illuminet, who themselves have contractual relations with Alabama phone companies with which Integretel has no direct contact. (*Id.* ¶ 8.)

"Integretel remits certain tax payments to the State of Alabama on behalf of its customers from payments made to it by . . . [LECs] on whose billing statements Integretel's invoices appear on behalf of its customer clients." (*Id.* ¶ 9.) According to Dawson, none of the payments are for revenue generated or earned by Integretel in Alabama. (*Id.*) Dawson testified that "Integretel earns no revenue or income from direct contracts or business relationships with Alabama residents and pays no taxes on its own behalf in Alabama." (*Id.*) Integretel's remittance of taxes is a service it provides for its customers and represents taxes owed on services performed not by Integretel, but rather by its customers. (*Id.*) According to Dawson, Integretel remitted $5,109 in taxes to Alabama on behalf of customers in 2000, and it remitted $3,775 in taxes to Alabama on behalf of customers in 2001. (*Id.* ¶ 10.)

Integretel has never filed suit in an Alabama court. (*Id.* ¶ 11.) However, it has previously been sued in Alabama. (Doc. 16 ¶ 3(c).) According to FTT, the case remained pending for nearly two years before it was dismissed. (*Id.*)

3

FTT, a Georgia corporation with business operations in Georgia, Alabama, and California, provides billing and collection services to internet, telecommunications, and enhanced telephone markets. (Doc. 4 ¶¶ 2, 8, 10.) FTT's customers are companies that sell telecommunication products and services to commercial and residential consumers, who are referred to as "end users." (*Id.* ¶ 9.) The billing for the services that FTT's customers provide to end users is handled through the end users' local exchange telephone carriers ("LECs"). (*Id.*) For example, FTT receives electronic data from one of its customers and processes the data so that it can be read by the LEC. (*Id.*) FTT then forwards the processed data to the LEC, so that the LEC can include the charge on the end user's telephone bill. (*Id.*) FTT ensures that the LEC includes the customer's charge on the end user's telephone bill, and reconciles the payment received from the customer or the end user's non-payment of the charge with the data it received from its customer. (*Id.*)

On or about June 15, 1998, FTT entered into a written agreement with Private Voice, which was then known as Paragon Voice, to perform billing and collection services. (*Id.* ¶ 10.) Under the contract, FTT assumed the obligations of processing, editing, and rating transaction details, applying appropriate taxes to each transaction, formatting the data so that it could be read by the LECs, forwarding the data to the appropriate LEC, handling questions from end users, making post-billing adjustments, forwarding taxes to the appropriate authorities, and furnishing reports to Private Voice regarding these activities. (*Id.*) Pursuant to the contract terms, "transactions," as defined in the contract, constituted assets of FTT and could not be transferred or assigned absent its consent. (*Id.* ¶ 13.)

4

Beginning in 1998 and continuing through the present, Private Voice sent transactions to FTT pursuant to the contract, and FTT provided billing and collection services for those transactions. (*Id.* ¶ 14.) According to plaintiffs, in approximately October 2001, Private Voice breached its contract with FTT. (*Id.* ¶ 17.) Plaintiffs allege that Private Voice entered into a contract with Integretel, a direct competitor of FTT for billing services. (*Id.* ¶ 17(a).) Plaintiffs allege that pursuant to the contract between Private Voice and Integretel, Private Voice began transferring end user contracts which, under the Private Voice-FTT contract, were FTT's assets and could not be transferred without its consent. (*Id.*; *see id.* ¶ 13.)

FTT's records indicate that prior to November 2001, FTT "provided billing services related to large numbers of transactions billed to end users in the State of Alabama" pursuant to the Private Voice-FTT contract.[2] (Jackson Aff. at 1.) In October 2001, FTT's billing services pursuant to the Private Voice-FTT contract "included services related to 3,510 transactions for 3,508 end users located in Alabama." (*Id.* at 2, Ex. 2.) FTT's "records show a total of 113,401 transactions billed to end users in Alabama pursuant to its contract with Private Voice. (*Id.*, Ex. 3.) FTT's Director of Information Systems, Angeline Jackson, testified that "[b]ased on this data, [she] would expect current data maintained by the current provider of billing and related services for Mercury and Private Voice, which [she] is

---

[2] Though not at issue in this lawsuit, FTT alleges that it also had a contractual relationship with Mercury Marketing Technologies of Delaware ("Mercury") that is similar to its relationship with Private Voice. (*See* Jackson Aff. at 1.) In October 2001, FTT's billing services pursuant to its contract with Mercury related to 1,072 transactions for 1,071 end users in Alabama for October 2001, and a total of 12,994 transactions billed to Alabama end users. (*Id.* at 2.)

informed is Integretel, Inc., to likewise reflect numerous transactions billed to end users in Alabama." (*Id.*)

## II. **MOTION TO DISMISS DEFENDANT INTEGRETEL**

### A. STANDARD OF REVIEW

In the context of a motion to dismiss for lack of personal jurisdiction, "the plaintiff bears the burden of establishing a prima facie case of personal jurisdiction over the movant, non-resident defendant." *See Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988). A prima facie case is established if the plaintiff presents evidence sufficient to defeat a motion for judgment as a matter of law. *Id.* The court "must construe the allegations in the complaint as true, to the extent they are uncontroverted by defendant's affidavits or deposition testimony." *Id.* Where evidence presented by the parties conflicts, the court must construe all reasonable inferences in favor of the plaintiff. *Id.*

### B. DISCUSSION

In diversity cases, "the federal court is bound by state law concerning amenability of a person or a corporation to suit, so long as state law does not exceed the limitations imposed by the Due Process Clause of the Fourteenth Amendment." *Pesaplastic, C.A. v. Cincinnati Milacron Co.*, 750 F.2d 1516, 1521 (11th Cir. 1985) (citation omitted). The Alabama long-arm statute authorizes personal jurisdiction to the fullest extent permitted by the United States Constitution. *Martin v. Robbins*, 628 So. 2d 614, 617 (Ala. 1993). Because Alabama courts interpret the Alabama long-arm statute to reach the limits of federal due process, applying the two-part analysis of *International Shoe Co. v. Washington*, 326 U.S. 310 (1945),

6

is sufficient to determine the defendant's amenability to suit in Alabama. *See Morris*, 843 F.2d at 492 n.3.

The determination of whether a defendant is amenable to a forum's jurisdiction requires a two-part analysis. First, the defendant must purposefully establish sufficient "minimum contacts" with the forum state to satisfy due process requirements. *Id.*, 843 F.2d at 492 (citing *International Shoe*, 326 U. S. at 316 (1945)). Unilateral action by the plaintiff or a third party does not satisfy the "minimum contacts" requirement. *Id.* (citing *Hanson v. Denckla*, 357 U.S. 235, 253 (1958); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298 (1980)). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *Hanson v. Denckla*, 357 U.S. at 235). Second, the forum's exercise of personal jurisdiction over a defendant must comport with "traditional notions of fair play and substantial justice." *Morris*, 843 F.2d at 492 (citing *International Shoe*, 326 U. S. at 316).

In order to meet its burden, plaintiffs must produce sufficient evidence that the defendant purposefully established sufficient minimum contacts with the forum state to satisfy due process requirements. *See Morris*, 843 F.2d at 492. Determining whether defendant has sufficient "minimum contacts" involves analysis of three criteria: (1) whether the contacts relate to or give rise to the plaintiffs' cause of action; (2) whether the contacts involve some purposeful availment of the privilege of conducting activities within the forum;

7

and (3) whether the contacts within the forum state are such that the defendant should reasonably anticipate being haled into court there. *See Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 631 (11th Cir. 1996). If plaintiffs meet this burden, the defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477.

"The nature and quality of these contacts . . . vary depending upon whether the type of personal jurisdiction being asserted is specific or general." *Consolidated Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000). Specific jurisdiction is exercised over a defendant in a suit arising out of or related to the defendant's contacts with that forum. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). General jurisdiction is exercised over a defendant in a suit not arising out of or related to the defendant's contacts with the forum. *Id.*, 466 U.S. at 414 n.9. "The due process requirements for general personal jurisdiction are more stringent than for specific personal jurisdiction, and require a showing of continuous and systematic general business contacts between the defendant and the forum state." *Consolidated Dev.*, 216 F.3d at 1292 (citations omitted).

### 1. Specific Personal Jurisdiction

FTT argues that court has specific personal jurisdiction over Integretel. (Doc. 16 ¶ 2(a).) In particular, FTT contends that Integretel allegedly converted its assets, "at least some of which would have, in the ordinary course of business, been received by, and would have benefitted, its Alabama office." (FTT's Mem. in Opp. to Integretel Motion to Dismiss

8

["FTT's Memo"] at 4.) FTT maintains that its damages occurred in its Birmingham office. (*Id.* at 5.) FTT intimates that an Alabama court could exercise personal jurisdiction over Integretel because, as a result of the alleged conversion, Integretel is receiving some funds that FTT's Alabama office would have received but for the allegedly tortious conduct. This argument is unpersuasive.

First, despite FTT's allegations that its Alabama office would have received more funds absent Integretel's alleged conversion, there is no indication that Integrel engaged in tortious conduct occurring in or having any substantial relationship to Alabama. Second, even if Integretel's conduct caused FTT damage at its Alabama office as opposed to its other offices, and the conduct constitutes a minimum contact to Alabama, there is no indication that Integretel "purposefully established" the contact. *See Morris*, 843 F.2d at 492 (citing *International Shoe*, 326 U.S. at 316)(holding that defendant is not amenable to a forum's jurisdiction unless it "purposefully established" sufficient minimum contacts with the forum).

FTT also argues that the court has specific personal jurisdiction over Integretel because Integretel converted its assets, specifically the proceeds of contracts between Private Voice and its end users, and because thousands of those end users are located in Alabama. (Doc. 16 ¶ 2(a).) In particular, FTT argues that specific personal jurisdiction exists because "thousands of end users in Alabama may have also been damaged, and defrauded, as a result of [Integretel's alleged] conversion of assets and the transfer of end user detail information from FTT . . . to Integretel." (*Id.* ¶ 2(b).) This argument is also unpersuasive.

First, there is no allegation or evidence that Integretel's communications with Alabama end users constitute more than incidental communications regarding billing disputes. Second, any injuries that might have been suffered by Alabama end users are entirely speculative and are not at issue in this lawsuit. Third, whether Integretel caused Alabama end users a legally cognizable injury is irrelevant to FTT's only claim against Integretel, which is that Integretel converted its property. Because Integretel's contacts with Alabama end users are entirely incidental to FTT's conversion claim, they cannot serve as the basis for this court's exercise of specific personal jurisdiction over Integretel.

### 2. General Personal Jurisdiction

FTT also contends that the court has general personal jurisdiction over Integretel, because Integretel performs billing and collection services for Private Voice and Mercury "with respect to thousands of Alabama customers," has contractual relationships with companies that provide services to customers in Alabama, and has previously participated in litigation in Alabama. (Doc. 16 ¶ 3(a)-(c).) This contention is unpersuasive.

First, having a contractual relationship with an entity that provides services to Alabama customers is not a contact to Alabama unless the contract has some relation to the entity's provision of goods or services to Alabama customers. FTT has not alleged that any of Integretel's contractual relationships, other than the ones with Private Voice or Mercury have more than an incidental connection to Alabama. Second, although Integretel's participation in litigation in Alabama is a contact with Alabama, it is not a strong one and without more cannot be construed as an admission on Integretel's part of general personal

jurisdiction in Alabama. Although Integretel has some contacts with Alabama, such limited connections with the forum do not rise to the continuous and systematic general business contacts required to sustain the assertion of general personal jurisdiction. *See Consolidated Dev.*, 216 F.3d at 1292 (citations omitted).[3]

### III. MOTION TO DISMISS DEFENDANT DAVID GIORGIONE

Defendant David Giorgione filed a Motion to Dismiss for Improper Venue. (Doc. 14.) Shortly thereafter, defendant FTT filed a Notice of Dismissal of Defendant David Giorgione, (doc. 21), to which Giorgione consented, (doc. 23). Therefore, all claims of FTT against Giorgione are due to be dismissed.

The court entered an Order requiring all opposition to Giorgione's Motion to Dismiss to be filed on or before February 1, 2002. (Doc. 15.) To date, CMF has filed no opposition to Giorgione's Motion to Dismiss for Improper Venue. Therefore, without opposition, Giorgione's Motion to Dismiss is due to be granted and CMF's claims against him are due to be dismissed.

### CONCLUSION

Because Integretel has not established sufficient minimum contacts whereby this court's exercise of jurisdiction over it would be consistent with traditional notions of fair play

---

[3] In its response to Integretel's Motion to Dismiss, FTT also asks the court to allow it to conduct jurisdictional discovery "pertaining to the issues of fact raised by Integretel's motion." (Doc. 16 at 3-4.) Because there are no jurisdictional facts in dispute, jurisdictional discovery in not appropriate. *See Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 729 n.7 (11th Cir. 1982) (suggesting that a litigant may have a qualified "right" to jurisdictional discovery when the court's jurisdiction is genuinely in dispute).

and substantial justice, its motion to dismiss for lack of personal jurisdiction is due to be granted. Also, because plaintiff CMF does not oppose the Motion to Dismiss filed by the remaining defendant, David Giorgione, such Motion is due to be granted and all claims against Giorgione are due to be dismissed. FTT's claims against Giorgione are due to be dismissed by consent of the parties. An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

     **DONE** this 31st day of March, 2003.

*/s/ Sharon Lovelace Blackburn*
**SHARON LOVELACE BLACKBURN**
United States District Judge